**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**BEYOND, INC. D/B/A OVERSTOCK,**

        *Plaintiff,*

      **v.**

**THE ASSET STORE, LLC D/B/A
OVERSTOCK OUTLET,** *et al.,*

        *Defendants.*

**Civil No.: 1:24-cv-01555-JRR**

<u>**MEMORANDUM OPINION**</u>

Pending before the court is Defendant The Asset Store, LLC d/b/a Overstock Outlet's Motion to Dismiss Complaint. (ECF No. 16; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

## I.    <u>BACKGROUND</u>[1]

Founded in 1997, Plaintiff Beyond, Inc. d/b/a Overstock is an "a leading e-commerce marketplace where customers can purchase a wide range of quality consumer goods, from home and office furniture—including mattresses—to apparel and beauty products at affordable prices." (ECF No. 1 ¶ 10.) Its e-commerce marketplace has been available online since 1999. *Id.* ¶ 11. Plaintiff owns multiple U.S. federal trademark registrations related to its name, including OVERSTOCK.COM, OVERSTOCK.COM YOUR ONLINE OUTLET, LIVE BETTER WITH OVERSTOCK.COM, IT'S ALL ABOUT THE O – OVERSTOCK.COM, OVERSTOCK.COM – IT'S ALL ABOUT THE O, O, and an image of an O:

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).



(ECF No. 1 pp. 4–5; the "Marks.")  "The term 'OVERSTOCK' is the core, distinctive element" of Plaintiff's federally registered marks.  *Id.* ¶ 23.  Moreover, Plaintiff "has developed common law trademark rights in the OVERSTOCK mark by virtue of its continuous use of the mark since as early as 1999 in connection with is e-commerce platform selling home, office, and consumer goods and furniture."  *Id.* ¶¶ 17, 23.

Defendant is a Maryland-based company with its principal place of business in Baltimore, Maryland that, like Plaintiff, sells mattresses, furniture, and other home goods through its website, as well as through its brick-and-mortar store in Baltimore.[2]  (ECF No. 1 ¶¶ 2, 20, 21.)  Defendant's mark, Plaintiff alleges, is "nearly identical" to Plaintiff's marks "in appearance, sound, and meaning," pointing to emphasis of the word "OVERSTOCK" and the letter "O" and utilizing the same color scheme—all while offering goods and services nearly identical to those of Plaintiff. (ECF No. 1 ¶¶ 22–26.)  Defendant's mark is as follows:



(ECF No. 1 at p. 7.)

---

[2] Also named as Defendants are Does 1–10, identified as "persons or entities responsible in whole or in part for the wrongdoing alleged"; each is alleged to have "participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts."  (ECF No. 1 ¶ 3.)

Plaintiff contends that consumers are likely to be, and indeed have been, confused by Defendant's website or retail store, mistakenly believing that "its goods and/or services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with" Plaintiff. *Id.* ¶ 27. Demonstrating same, Plaintiff attaches screenshots of reviews by customers from Google.com expressing confusion of Defendant with Plaintiff. *Id.* at pp. 11–12. Plaintiff alleges that Defendant's "continuing or future use" of the OVERSTOCK Mark "is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship," and further:

> Through their use of the confusingly similar OVERSTOCK OUTLET mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that Overstock somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar OVERSTOCK OUTLET mark.

> In fact, there is no connection, association, or licensing relationship between Overstock and Defendants, nor has Overstock ever authorized, licensed, or given permission to Defendants to use the confusingly similar OVERSTOCK OUTLET mark in any manner.

> Defendants' use of the confusingly similar OVERSTOCK OUTLET mark will likely cause confusion as to the origin and authenticity of Defendants' website, retail store, and goods and services, and will likely cause others to believe that there is a relationship between Defendants and Overstock when there is, in fact, not.

(ECF No. 1 ¶ 45–46, 54–56.) Plaintiff contends Defendants were on notice of their Marks based upon their federal trademark registration, and Plaintiff's communications with them pre-suit. *Id.* ¶¶ 42, 53. In essence, Defendants' conduct was, as Plaintiff states, "knowing, intentional, and willful." *Id.* ¶¶ 42, 53.

Plaintiff initiated this action on May 29, 2024 (ECF No. 1; the "Complaint), asserting four claims for relief related to trademark infringement and unfair competition:

Count I: Federal Trademark Infringement in violation of 15 U.S.C. § 1114;
Count II: Federal Unfair Competition/False Designation of Origin in violation of 15 U.S.C. § 1125(a);
Count III: Trademark Infringement in violation of MD. CODE ANN., BUS. REG. § 1-414, *et seq.;* and
Count IV: Common Law Unfair Competition

*Id.* ¶¶ 38–79.  Defendant now moves to dismiss the Complaint.  (ECF No. 16.)

## II.   <u>LEGAL STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the grounds for the court's jurisdiction."[3]  FED. R. CIV. P. 8(a)(1).  The purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *see North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) (reviewing a district court's decision to dismiss a plaintiff's complaint for failure to comport with Rule 8(a) and noting various factors for consideration, including "the length and complexity of the complaint," "whether the complaint was clear enough to enable the defendant to know how to defend himself," and "whether the plaintiff was represented by counsel") (citations omitted).

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the

---

[3] Defendant also asserts that Plaintiff's Complaint runs afoul of Federal Rule of Civil Procedure 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  FED. R. CIV. P. 10(b).  Plaintiff's Complaint speaks for itself; it plainly complies with this rule.  To the extent Defendant challenges shotgun-style pleading, such argument is more properly raised under Rules 8 and 12.

plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015))

## III.  **ANALYSIS**

### A.  **"Shotgun Pleading"**

Defendant first contends that Plaintiff's Complaint should be dismissed as a "shotgun pleading" because it incorporates prior paragraphs containing factual allegations under each claim for relief and has a separate section for its prayer for relief.  (ECF No. 16-1 at pp. 6–7.)

"A 'shotgun pleading' is one that 'fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to

know which allegations of fact are intended to support which claims for relief[.]"  *Baxter v. AmeriHome Mortg. Co., LLC*, 617 F. Supp. 3d 346, 351 (D. Md. 2022) (quoting *Lee v. Meyers*, No. ELH-21-1589, 2022 WL 252960, at *11 (D. Md. Jan. 27, 2022)); *see Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'").  As a sister court has explained:

> Sometimes this is because "each count incorporates by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or cause of action, appearing in a count's heading," making it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (citation, brackets, and internal quotation marks omitted). Other times the offending complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The chief evil caused by these types of pleadings is that "to one degree or another, ... defendants [are not afforded] adequate notice of the claims against them and the grounds upon which each claim rests" thereby impeding a meaningful response. *Id.*

*United States v. Premier Med., Inc.*, No. 6:18-CV-165-TMC, 2023 WL 9060896, at *14 (D.S.C. Sept. 28, 2023).

As Defendant references, an oft-cited Eleventh Circuit case discusses the "rough types or categories of shotgun pleadings," including, relevant here: "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," "a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and a complaint that does not separate "into a different count each

cause of action or claim for relief." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

Defendant argues the Complaint falls within the above three categories.  The court disagrees.  Plaintiff's Complaint speaks for itself—it is plainly not "replete with conclusory, vague, and immaterial facts;" nor do Plaintiff's claims fail to make plain the relief sought (and the Complaint's prayer for relief includes specific reference to the statutory basis for much of the relief sought).  *See, e.g.*, ECF No. 1 ¶¶ 46–49, 59–62, 68–69, 78–79, B–C, F–K.  Plaintiff's manner of incorporating foregoing factual allegations is a common, efficient practice of litigation when implemented as Plaintiff has done here.  As this court previously recognized: "Nearly every complaint filed in this Court (and others, in this Court's experience) contains similar language.  That boilerplate is, therefore, more the hallmark of habitually cautious lawyering than 'the hallmark of a shotgun pleading' as Defendants argue."  *Baxter v. AmeriHome Mortg. Co., LLC*, 617 F. Supp. 3d 346, 351 (D. Md. 2022); *see also* FED. R. CIV. P. 10(c) (providing that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion").

Moreover, Defendant's argument as to the incorporation of prior paragraphs neglects the critical inquiry in this case—whether Plaintiff's Complaint "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief."  *See Baxter*, 617 F. Supp. 3d at 351, *supra*.  Plaintiff's incorporation of its factual allegations does not suggest shotgun pleading here because the bases for its asserted claims remain sufficiently clear notwithstanding incorporation of previous factual allegations.  Indeed, the *Weiland* court expressly recognized such circumstances, explaining:

> Weiland's re-alleging of paragraphs 1 through 49 at the beginning of each count looks, at first glance, like the most common type of shotgun pleading. But it is not. As we have already discussed, this Court has condemned the incorporation of preceding paragraphs where a complaint "contains several counts, each one incorporating by reference the allegations of its predecessors [i.e., predecessor *counts],* leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir.2002) . . . .

> More importantly, this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count. This may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it. And it may also explain why the district court could and did understand the claims that were stated in these two counts.

792 F.3d at 1324 (footnote omitted). The same is true here. Plaintiff's claims "largely appear to have the same factual underpinning"; this case is "not one where incorporating prior allegations makes it impossible to understand the claims." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1075 (D. Colo. 2021) (citation omitted).

Relatedly, as the *Weiland* court and others implicitly recognize, that Defendant advances argument showing an understanding of the claims asserted and the factual basis for same, as well as the basis for the requested relief, further supports that Rule 8(a) is satisfied. *See Weiland*, 792 F.3d at 1324, *supra*; *Renzi v. Naphcare, Inc.*, No. 1:24CV211, 2025 WL 448007, at *3 (M.D.N.C. Feb. 10, 2025) (noting "[i]n fact, Defendants' motions, which identify the individual causes of action against the parties and address why they should be dismissed, indicate the Complaint gives them adequate notice of the claims against them as required by Rule 8" (citation omitted)); *Baxter*,

617 F. Supp. 3d at 351 (explaining that the complaint at issue was "clear enough to allow Defendants to respond, because they *did* meaningfully respond" (emphasis in original)).

In sum, Plaintiff's Complaint alleges a factual basis for each asserted claim and the related relief sought. It constitutes a "short and plain statement of the claim" showing its entitlement to relief. FED. R. CIV. P. 8(a)(2). Defendant's argument that the Complaint constitutes shotgun pleading is unpersuasive.

### B. Counts I and II: Lanham Act Claims

"Trademark infringement laws limit the ability of others to use trademarks or their colorable imitations in commerce, so that consumers may rely on the marks to make purchasing decisions." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 321 (4th Cir. 2015). "The Lanham Act's provisions prohibiting trademark infringement, 15 U.S.C. §§ 1114(1) and 1125(a), exist to protect consumers from confusion in the marketplace." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 321 (4th Cir. 2015). The relevant provisions of the Lanham Act provide:

> (1) Any person who shall, without the consent of the registrant--
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . .
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a). Further,

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his

or her goods, services, or commercial activities by another person,
or
(B) in commercial advertising or promotion, misrepresents the
nature, characteristics, qualities, or geographic origin of his or her
or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he
or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014); *see Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706 (4th Cir. 2016) (recognizing same).

"The Lanham Act's provisions prohibiting trademark infringement, 15 U.S.C. §§ 1114(1) and 1125(a), exist to protect consumers from confusion in the marketplace." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 321 (4th Cir. 2015). To prevail on its Lanham Act trademark infringement claims, Plaintiff must show that (1) it owns a legally protectable trademark; (2) Defendants used the trademark in commerce without Plaintiff's consent; (3) Defendants used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) Defendants' use of the mark is likely to cause confusion, mistake, or deception among consumers. *Rosetta Stone Ltd. v. Google, Inc.,* 676 F.3d 144, 152 (4th Cir. 2012); *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir. 2012); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922 (4th Cir. 1995); *see also Thorne Research, Inc. v. Davachi*, No. 2:24-cv-02356-DCN, 2024 WL 4607943, at *5 (D.S.C. Oct. 29, 2024) (noting that "[t]he elements of Lanham Act unfair competition . . . and Lanham Act trademark infringement are all essentially the same"); *JFY Props. II LLC v. Gunther Land, LLC*, No. CV ELH-17-1653, 2019 WL 4750340, at *15 (D. Md. Sept. 30, 2019) (recognizing that "[t]he

10

standards for asserting Lanham Act claims for trademark infringement and unfair competition based on the inappropriate use of a mark are largely the same") (citation omitted).

With one exception addressed *infra*, Defendant does not contest that Plaintiff has pled facts in support of these elements. The court is indeed persuaded that Plaintiff has pled sufficient facts— that it owns the legally protected Marks; that Defendants were aware of and intentionally used its infringing mark in commerce, without Plaintiff's consent, and in connection with the sale of goods and services; and that Defendants' use of the infringing mark is likely to cause, and indeed has caused, according to Plaintiff, confusion. *See Rosetta Stone*, 676 F.3d at 152, *supra*.

Defendant argues that Plaintiff does not allege that Defendants' actions "constitute false designation of origin and unfair competition," noting that the Complaint contains no allegations in support of a false designation of origin as there is no allegation that "Plaintiff was the originator or producer of the goods and merchandise Plaintiff sold, that Plaintiff affixed its own labels and brand to the goods and merchandise it sold, or that Defendants labeled and passed the goods it sold off as those of the Plaintiff," or false advertising. (ECF No. 16-1 at pp. 9–10.)

Plaintiff does not claim reverse passing off; instead claims unfair competition (and related consumer confusion) based upon Defendant's use of its mark. (ECF No. 18 at p. 7.) A reverse passing off claim "occurs when a 'producer misrepresents someone else's goods or services as his own.'" *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC.*, 598 F. Supp. 3d 348, 356 (D. Md. 2022) (quoting *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 438 (4th Cir. 2010)); *see Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 710 n.7(4th Cir. 2016) (same). Plaintiff alleges no such claim and therefore need not satisfy pleading requirements of same. *Cf. Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 438

(4th Cir. 2010), *as amended* (Aug. 24, 2010) (discussing the elements of a reverse passing off claim and referring to same as a "type" of false designation of origin).

In view of the foregoing, Plaintiff states plausible Lanham Act claims.

### 1. *Treble Damages*[4]

Defendant argues that Plaintiff is not entitled to treble damages under 15 U.S.C. § 1117(a). (ECF No. 16-1 at pp. 7–8.)  While it is true that 15 U.S.C. § 1117(a) does not provide an "entitlement" to treble damages, it does include: "In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  As the court reads it, Plaintiff's request is within the scope of the statute.

In reply, Defendant maintains its argument, citing *Georgia-Pacific Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710 (4th Cir. 2015), *as amended* (Apr. 15, 2015), for the principle that "treble damages" are "words of precise statutory art" based on the titling of 15 U.S.C. § 1117(b) as "Treble damages for use of counterfeit marks."[5]  (ECF No. 19 at p. 2.)  *See also* 15 U.S.C. § 1117(b) (providing that "[i]n assessing damages . . . in a case involving use of a counterfeit mark or designation. . . , the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of" certain statutory circumstances).

---

[4] In its opposition, Plaintiff does not argue that a Rule 12(b)(6) motion is not the proper vehicle to challenge relief sought (as opposed to a claim).  The court thus considers the arguments as the parties have briefed them. The court acknowledges, however, that "a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).  Defendant does not advance argument as to same, and the court similarly does not discern a standing issue where Plaintiff has plausibly alleged claims for each general type of relief.

[5] It further bears mention that the phrase "treble damages" is not used in the text of 15 U.S.C. § 1117(b), but rather in its title.  *See Bhd. of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 528 (1947) (recognizing that "headings and titles are not meant to take the place of the detailed provisions of the text").

*George-Pacific* does not support Defendant's position.  The Fourth Circuit did not conclude that treble damages are not permitted under 15 U.S.C. § 1117(a); it held that the district court erred in applying 15 U.S.C. § 1117(b)[6] to determine whether to award treble damages under 15 U.S.C. § 1117(a) because the sections impose "vastly different legal standards."  *Georgia-Pac.*, 781 F.3d at 718.  (Further, as Plaintiff points out, *Georgia Pacific* concerned recovery of profits. *Id.* at 717.)

Additional factors raise doubt as to Defendant's argument.  First, despite claiming that "treble damages" is a phrase of "precise statutory art" in this context, the phrase does not appear to be defined in that chapter of the U.S. Code.  *See* 15 U.S.C. § 1127.  Second, while contending that treble damages are not permitted under 15 U.S.C. § 1117(a), Defendant sets forth no substantive argument as to the difference in the phrase "treble damages" (meaning, "[d]amages that, by statute, are three times the amount of actual damages that the factfinder determines is owed," *see* DAMAGES, Black's Law Dictionary (12th ed. 2024)), and the text of 15 U.S.C. § 1117(a) that provides for an award of "actual damages, not exceeding three times such amount."

In all, Defendant's argument is unavailing.  The court will deny its Motion as to treble damages for the foregoing reasons.

### 2. *Prejudgment Interest*

Defendant further seeks to dismiss Plaintiff's claim to the extent it seeks prejudgment interest related to its Lanham Act claims, arguing that prejudgment interest is only permitted when provided for in the specific statutory provision, which is not the case here.  (ECF No. 16-1 at pp. 8–10.)  In response, Plaintiff clarifies that it seeks prejudgment interest to be awarded pursuant to

---

[6] Indeed, 15 U.S.C. § 1117(b)'s instruction that the court "shall . . . enter judgment for three times such profits or damages" is certainly distinct from 15 U.S.C. § 1117(a)'s allowance that the court "may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."

the court's inherent authority as to same. Both parties again cite to *Georgia-Pacific Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710 (4th Cir. 2015), *as amended* (Apr. 15, 2015).

As the Fourth Circuit explained:

> To be sure, as a general matter, prejudgment interest may be awarded at the district court's discretion unless the applicable statute provides otherwise. *See Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc). But when, as here, a statute provides particularized forms of monetary relief and explicitly authorizes prejudgment interest in some circumstances but not others, we conclude that prejudgment interest is not intended to be awarded except as provided in the statute. *See Moscow Distillery Cristall v. Pepsico, Inc.,* Nos. 96–36217, 96–36249, 96–36250, 1998 WL 101696, at *3 (9th Cir. Mar. 9, 1998) ("Prejudgment interest is available under the Lanham Act only for counterfeiting ..." (citing 15 U.S.C. § 1117(b))). As relevant here, § 1117(a) makes no specific provision for prejudgment interest in cases involving a recovery of a defendant's profits, nor does prejudgment interest itself constitute a profit, as that term is generally used.
>
> We recognize that at least one court has authorized prejudgment interest under § 1117(a) in an "exceptional" case. *See Am. Honda Motor Co. v. Two Wheel Corp.,* 918 F.2d 1060, 1064 (2d Cir. 1990). But we can find no support for its conclusion in the text of the statute. Indeed, § 1117(a) employs the "exceptional case" standard only for an award of attorneys fees, not prejudgment interest.

*Georgia-Pac.*, 781 F.3d at 722; *see Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 225 (3d Cir. 2021) (relying on *Georgia-Pacific* in holding "prejudgment interest and § 1117(a) does not provide for prejudgment interest," and so "prejudgment interest is unavailable under § 1117(a)").

It did not, however, "categorically foreclose" such a possibility:

> That said, we do not categorically foreclose an award of prejudgment interest under § 1117(a) as an element of a *damages* award in a trademark infringement case. To be sure, one's loss of the use of a particular sum of money over a period of time causes damage, for which the law generally allows an award of prejudgment interest. *See generally Monessen Sw. Ry. Co. v. Morgan,* 486 U.S. 330, 335, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988) ("Prejudgment interest is normally designed to make the plaintiff

> whole and is part of the actual damages sought to be recovered");
> *Johnson v. Cont'l Airlines Corp.,* 964 F.2d 1059, 1063 (10th
> Cir.1992) ("[P]rejudgment interest is an integral element of
> compensatory damages . . ."). But, in this case, Georgia–Pacific did
> not undertake to prove its own *damages,* claiming instead only a
> disgorgement of von Drehle's gross *profits.*

*Georgia-Pac.*, 781 F.3d at 722; *see Concordia Pharms., Inc. v. Method Pharms., LLC*, 240 F.

Supp. 3d 449, 458 (W.D. Va. 2017) (relying on *Georgia-Pacific* in explaining that "[a]lthough the

Lanham Act does not specifically provide for prejudgment interest, such an award is within the

discretion of the trial court").[7]

   While Defendant's argument brings scrutiny, if not doubt, upon Plaintiff's ability to

recover prejudgment interest in this context, the court is not persuaded that prejudgment interest

is barred as a matter of law.  The court will therefore deny the Motion on that basis.

### 3. *Injunctive Relief*

   Defendant next argues that Plaintiff has failed to plead factual allegations in support of its

claim for an injunction.  Defendant conflates the applicable pleading standard with Plaintiff's

burden of proof.

   A party seeking a permanent injunction must demonstrate "actual success on the merits."

*Mayor of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020).  Plaintiff must then ultimately

demonstrate "(1) it has suffered an irreparable injury; (2) remedies available at law, such as

monetary damages, are inadequate to compensate for that injury; (3) considering the balance of

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public

interest would not be disserved by a permanent injunction." *Mayor of Baltimore v. Azar*, 973 F.3d

---

[7] Defendant seemingly acknowledges same in its Motion, arguing that it is for the factfinder to determine whether to award prejudgment interest; however, even assuming without deciding Defendant's position is correct, Defendant concedes a basis for prejudgment interest, and Plaintiff seeks such relief in its pleading.

258, 274 (4th Cir. 2020) (citation modified) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

As set forth above, Plaintiff states plausible Lanham Act claims; Plaintiff alleges facts related to its Marks, Defendant's intentional use of an identical or nearly identical mark that is likely to cause, and has caused, consumer confusion in commerce. It need not prove these facts at this stage. Plaintiff's pleading of its irreparable harm is also sufficient. It alleges Defendants' activities "have caused and will continue to cause irreparable harm" because, in part, the infringement interferes with Plaintiff's goodwill and consumer relationship, harming its "reputation as a source of high-quality goods and services." (ECF No. 1 ¶¶ 46, 59, 66, 73, 75.) Indeed, it is concerned that consumers will mistakenly believe that it "is responsible for offering low quality and used products" based Defendants' conduct. *Id.* ¶ 35.

Further relevant here, 15 U.S.C. 1116(a) provides in part:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.

15 U.S.C. § 1116(a).

Amendment to the Lanham Act in 2020 "was meant to codify the presumption already recognized by many courts in trademark infringement cases." *Under Armour, Inc. v. Exclusive Innovations, Inc.*, No. SAG-20-03427, 2021 WL 2042320, at *6 (D. Md. May 21, 2021) (citing

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995)); *see*

*El Pollo Rico, LLC v. Wings & Pollo, LLC*, No. 21-CV-2346, 2022 WL 2916168, at *2 (D. Md.

July 25, 2022) (discussing same). Indeed, the Fourth Circuit has previously recognized the same,

explaining that "irreparable injury regularly follows from trademark infringement." *Lone Star

Steakhouse & Saloon*, 43 F.3d at 939 (citing *Wynn Oil Co. v. American Way Service Corp.,* 943

F.2d 595, 608 (6th Cir. 1991)); *see Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp.

2d 588, 596 (D. Md. 2013) (recognizing same).

Plaintiff's pleading also sufficiently addresses the balance of equities and public interest

factors. Plaintiff alleges that the consumer confusion caused by Defendants' confusingly similar

mark will harm Plaintiff while allowing Defendants to "reap the benefits of Overstock's reputation

and goodwill" based on same, and that Plaintiff's harms, as discussed above, outweigh any harm

to Defendant. (ECF No. 1 ¶¶ 28–29, 37.) Moreover, Plaintiff asserts that the public interest is

served by avoiding consumer confusion. *Id.* ¶ 37.

Plaintiff has not moved for injunctive relief at this time; and it need not prove its case at

this stage. The Motion will be denied on this basis.

### C. Count III: Maryland Trademark Infringement [8]

Defendant moves for dismissal of Plaintiff's Maryland statutory claim because, Defendant

urges, Plaintiff does not allege it registered its marks with Maryland's Office of the Secretary of

State. (ECF No. 16-1 at pp. 10–11.) Plaintiff argues that the law does not impose any such

requirement. (ECF No. 18 at p. 8.) Defendant admits in reply that it has found "no case addressing

---

[8] "When considering a State law claim, the Court must apply the law of the forum state (including as to choice of law), whether proceeding under supplemental or diversity jurisdiction." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 418 n.17 (D. Md. 2022) (citing cases).

this issue," but argues that the "plain meaning of the statute itself is sufficient authority." (ECF

No. 19 at pp. 3–4.)

Maryland's trademark law provides that a person may not:

> (1) use, without the consent of the registrant, a reproduction or colorable imitation of a mark registered under this subtitle in connection with the sale, offering for sale, or advertising of goods or services if the use is likely to confuse or deceive about the origin of the goods or services; or
>
> (2) reproduce or colorably imitate a mark registered under this subtitle and apply the reproduction or colorable imitation to an advertisement, label, package, print, receptacle, sign, or wrapper that is intended to be used:
>
> (i) with goods or services; or
>
> (ii) in conjunction with the sale or other distribution of goods or services in the State.
>
> (b)(1) A person who violates this section is liable in a civil action to a registrant for any remedy provided in this section.
>
> (2) A registrant may recover profits or damages from a person who violates subsection (a)(2) of this section only if the person intended that the mark be used to confuse or deceive.
>
> (c) A registrant may sue to enjoin the display, manufacture, sale, or use of a reproduction or colorable imitation of a mark of the registrant.

MD. CODE ANN., BUS. REG. § 1-414.

The plain language of the statute includes no express requirement that the mark holder must

register in Maryland.  As Defendant acknowledges, it has identified no caselaw supporting its

reading.  Indeed, the Appellate Court of Maryland recognizes that "common-law service marks

are protected even if not registered under the statute," and that Maryland's trademark statute "itself

preserves the enforceability of common-law trade or service marks." *Sea Watch Stores Liab. Co.*

*v. Council of Unit Owners of Sea Watch Condo.*, 115 Md. App. 5, 45 (1997).  Here, Plaintiff alleges

both federally registered trademarks and common law trademark rights in its OVERSTOCK Mark. (ECF No. 1 ¶¶ 16–17.)

The argument is similarly not persuasive because "trademark infringement cases under either the Maryland statute or the Lanham Act are based on the same legal theory and require the same proof." *See Mid S. Bldg. Supply of Maryland, Inc. v. Guardian Door & Window, Inc.*, 156 Md. App. 445, 460 (2004) (citing cases); *Cmty. First Bank v. Cmty. Banks*, 360 F. Supp. 2d 716, 722 (D. Md. 2005) (recognizing same). *Cf. O.C. Seacrets, Inc. v. Caribbean Secrets LLC*, No. CIV. WDQ-12-1395, 2012 WL 4076166, at \*4 (D. Md. Sept. 10, 2012), *report and recommendation adopted,* No. CV WDQ-12-1395, 2012 WL 13012483 (D. Md. Oct. 3, 2012) (granting plaintiff's motion for default judgment as to a claim under MD. CODE ANN., BUS. REG. § 1-414 based upon, *inter alia*, the plaintiff's federally asserted registered trademark). The court thus declines to conclude that Plaintiff must allege state trademark registration to state a plausible claim under MD. CODE ANN., BUS. REG. § 1-414.

The Motion will be denied on this basis.

### 1. *Punitive Damages, Attorneys' Fees, and Injunctive Relief*

Defendant further moves to dismiss Plaintiff's Maryland statutory claim based on the relief sought, arguing that the Maryland statute does not provide for awards of punitive damages or attorneys' fees.[9] (ECF No. 16-1 at p. 11.) Defendant acknowledges that the statute does permit for injunctive relief, but incorporates its challenge to Plaintiff's Lanham Act claims. For the same reasons set forth above, the court rejects Defendant's challenge to injunctive relief.

---

[9] Defendant also challenges Plaintiff's request for prejudgment interest; however, Plaintiff's Complaint does not specify that it seeks prejudgment interest related to its Maryland statutory claim; and Plaintiff does not so indicate in its response to the Motion. (ECF No. 1 ¶¶ 63–69; (ECF No. 18 at p. 9 n.5.) The court therefore not need consider that here.

The sole question then is whether punitive damages and attorneys' fees are available forms of relief for violations of MD. CODE ANN., BUS. REG. § 1-414. Plaintiff relegates this to a footnote, noting: "Defendant's argument about whether §1-414(d) provides for prejudgment interest, punitive damages or attorney's fees is beside the point, as Overstock is entitled to such relief by virtue of the Lanham Act and common law."[10] (ECF No. 18 at p. 9 n.5.) While this may be true, Plaintiff specifically seeks punitive damages and reasonable attorneys' fees pursuant to MD. CODE ANN., BUS. REG. § 1-414. (ECF No. 1 ¶ 69.) The cited statute does not expressly provide for either; and Plaintiff does not counter Defendant's argument, effectively conceding the point. *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[s]" her claim where she failed to respond to argument).

Accordingly, the court will grant the Motion solely as to Plaintiff's claims for punitive damages and attorneys' fees based upon violation of the Maryland trademark statute. To be clear, as Plaintiff states, this has little bearing on the progression of this case because the court does not dismiss its requests for punitive damages and attorneys' fees under Plaintiff's other claims as set forth herein.[11]

### D. Count IV: Common Law Unfair Competition

Defendant's final argument is for dismissal of Plaintiff's common law unfair competition claim. It challenges the sufficiency of Plaintiff's pleading and the availability of relief Plaintiff

---

[10] Plaintiff has also not provided any basis for punitive damages under the Lanham Act; indeed, its pleading requests punitive damages solely based upon its Maryland statutory and common law claims. (ECF No. 1 ¶¶ 69, 79, K.) *Cf. Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988) (holding that the Lanham Act "does not authorize an additional award of punitive damages for willful infringement of a registered trademark").

[11] In view of Plaintiff's lack of argument and the minimal impact such limited dismissal will have, the court sees no reason to grant Plaintiff leave to amend. (ECF No. 18 at p. 10 n.7.) Should Plaintiff wish to seek leave to amend, it may file a motion for same.

seeks, namely, prejudgment interest, injunctive relief, and punitive damages.  In particular, Defendant charges that Plaintiff's pleading fails to "assert any specific facts that Defendants intended to mislead consumers or harm Plaintiff's business," the meaning of "willful deception or fraud" according to Defendant.  (ECF No. 16-1 at p. 12.)  "Common law trademark infringement and unfair competition under Maryland law require proof of the same elements as under the Lanham Act, and, accordingly, the Court will consider these claims together." *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 327 n.6 (D. Md. 2017); *see Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 n.3 (4th Cir. 1990) (noting that the Lanham Act and Maryland law legal frameworks are the same); *Hershey Co. v. Friends of Steve Hershey*, No. CIV. WDQ-14-1825, 2015 WL 795841, at *6 (D. Md. Feb. 24, 2015) (explaining that "claim of trademark infringement under federal law also suffices to establish its claim of trademark infringement under the common law of Maryland") (citation omitted).

Because the court finds Plaintiff plausibly pleads its Lanham Act claims, it similarly finds Plaintiff pleads a plausible claim of common law unfair competition.[12]

### 1. Prejudgment Interest

Akin to its argument addressed *supra*, Defendant argues Plaintiff cannot seek prejudgment interest because such an award is at the discretion of the factfinder.  (ECF No. 16-1 at pp. 12–13.) Even assuming without deciding Defendant's position is correct, its argument concedes a basis for an award of prejudgment interest.  Such an award bears on issues of fact and is thus not well-suited for resolution on a motion to dismiss.

---

[12] Although not required, the court does note, however, that Plaintiff alleges facts of intentionality and willfulness as discussed *infra*.

### 2. *Injunctive Relief*

Defendant incorporates its argument as to Plaintiff's request for injunctive relief under the Lanham Act. For the reasons set forth above, the court disagrees with Defendant.

### 3. *Punitive Damages*

Defendant contends that Plaintiff fails to allege specific facts to support a finding of actual malice, rendering its punitive damages request implausible under Maryland law. (ECF No. 16-1 at pp. 11, 13.) "[A]s a matter of Maryland law, punitive damages may only be awarded on the basis of 'actual malice.'" *French v. Hines*, 182 Md. App. 201, 248 (2008) (emphasis omitted). Punitive damages "are designed to . . . punish the wrongdoer for particularly egregious or heinous conduct and to deter others from following suit." *Anne Arundel Cnty. v. Reeves*, 474 Md. 46, 66 (2021). "What is needed to support an award of punitive damages is conscious and deliberate wrongdoing." *Hoffman v. Stamper*, 385 Md. 1, 42 (2005).

"Such damages are only 'awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability." *Beall v. Holloway-Johnson*, 446 Md. 48, 72 (2016) (quoting *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 454 (1992)); *see McMillan v. Kansas City Life Ins.*, No. 1:22-CV-01100-ELH, 2023 WL 3901279, at *8 (D. Md. June 7, 2023) ("Indeed, the Court is not in short supply of cases from federal courts interpreting Maryland's punitive damages law, as well as Maryland courts, that continue to find that wrongdoing or conduct only constitutes actual malice when it is characterized by evil motive, intent to injure, ill will, or fraud." (citing cases)). Allegations of malice "must still be alleged in accordance with Rule 8— a 'plausible' claim for relief must be articulated." *McMillan*, 2023 WL 3901279, at *8 (quoting *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012)).

Plaintiff's allegations as to willfulness are far from voluminous; however, at this stage of litigation, drawing all inferences in its favor, they are sufficient to allege a plausible claim that Defendant acted with an evil motive and intent to injure.  Of relevance here, Plaintiff points to the following in support of its allegation that Defendant's conduct was "knowing, intentional, and willful": Defendant's use of a "highly similar branding scheme," especially in view of Plaintiff's long-standing trademarks; evidence of the confusion of Defendants' customers and Defendant thus "reap[ing] the benefits of [Plaintiff's] reputation and goodwill"; and Defendants continued to use the mark after pre-litigation notice by Plaintiff.  (ECF No. 1 ¶¶ 27, 29, 42, 53.)  Most notably, Plaintiff alleges that Defendants' complained-of conduct was an intentional effort to confuse and mislead consumers:

> Through their use of the confusingly similar OVERSTOCK OUTLET mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that Overstock somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar OVERSTOCK OUTLET mark.

(ECF No. 1 ¶ 54.)  Given the foregoing allegations, the court finds Plaintiff pleads sufficient facts, even if just barely, to support its claim for punitive damages.  The court will therefore deny the motion on that basis.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 16) will be granted in part and denied in part.


Date: July 7, 2025                                    /S/

                                    _____
                                    Julie R. Rubin
                                    United States District Judge